# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT COURT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| *In re: Lion Air Flight JT 610 Crash*<br><br>RINI EKA A. SOEGIYONO, Administrator of the Estate of NIAR RURI SUNARNIATI SOEGIYONO, deceased, et al.<br><br>          Plaintiff,<br><br>      vs.<br><br>THE BOEING COMPANY, a corporation,<br><br>                Defendants. | **Lead Case: 1:18-cv-07686**<br>Case Nos.: 1:19-cv-03415 and 1:19-cv-05311 (Soegiyono Actions)<br><br>Related to Case No.: 1:19-cv-07686 (Nurdin Action)<br><br>*Assigned for all purposes to the Hon. Thomas M. Durkin*<br><br>PLAINTIFF RINI EKA A. SOEGIYONO'S CONTESTED MOTION FOR AN ORDER APPOINTING A PROFESSIONAL GUARDIAN AD LITEM FOR MINOR-PLAINTIFFS F.F.N.W. and F.S.N.W |
| RINI EKA A. SOEGIYONO, Administrator of the Estate of ANDRI WIRANOFA, deceased, et al.<br><br>          Plaintiff,<br><br>      vs.<br><br>THE BOEING COMPANY, a corporation,<br><br>          Defendants. | **Hearing Information**<br>Date:      May 14, 2020<br>Time:      9AM<br>Courtroom: 1441 (Judge Thomas Durkin) |
| Related to:<br><br>NURDIN RAKHMAN SEMENDAWAI, Administrator of the Estate of ANDRI WIRANOFA, deceased, et al.<br><br>          Plaintiff,<br><br>      vs.<br><br>THE BOEING COMPANY, a corporation,<br><br>          Defendants | |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on May 14, 2020, at 9AM, or as soon thereafter as the matter may be heard before the Honorable Judge Thomas M. Durkin, in Courtroom 1441, of the United States District Court for the Northern District of Illinois, located at 219 S. Dearborn Street, Chicago, Illinois 60604, Plaintiff RINI EKA A. SOEGIYONO ("Plaintiff Soegiyono" and/or "Ms. Soegiyono"), as the Administrator of the Estate of NIAR RURI SUNARNIATI SOEGIYONO ("Decedent Soegiyono"), will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure, Rule 17(c), for an order appointing a professional guardian *ad litem* for Decedent Soegiyono and Decedent ANDRI WIRANOFA's orphaned minor daughters, F.F.N.W. and F.S.N.W..

An order appointing a professional guardian *ad litem* is urgent and necessary to protect the interests of the orphaned minor daughters F.F.N.W. and F.S.N.W. in their claims against Defendant THE BOEING COMPANY ("Defendant" and/or "Boeing") for the deaths of their parents, Decedent Soegiyono and Decedent Wiranofa. A professional guardian *ad litem* will best protect the orphaned minors from the exploitation and harm caused and created by the actions and adverse interests of Decedent Wiranofa's father, Plaintiff NURDIN RAKHMAN SEMENDAWAI ("Nurdin") and Plaintiff Nurdin's counsel of record, HERRMANN LAW GROUP ("Herrmann").

Not only have Plaintiff Nurdin and his counsel Herrmann consistently placed their financial interests above the well-being of F.F.N.W. and F.S.N.W., but he and his counsel Herrmann have endangered and impeded their ability to settle their claims. Plaintiff Nurdin has ransacked the assets of Decedent Soegiyono and unlawfully signed a release and discharge of Decedent Wiranofa's heirs' legitimate claims against Defendant. Herrmann refuses to concede the jeopardy in which Plaintiff Nurdin has placed the orphan children's claims. Herrmann and Nurdin refuse to acknowledge that Nurdin acted without authority to release and discharge the minor plaintiffs' claims for the death of Decedent Wiranofa. If allowed to continue, Herrmann and Nurdin imminently threaten the fair and just resolution of the orphans' claims by: (i)

increasing the probability of a dismissal as released and discharged; (ii) strengthening Defendant's position on a *forum non conveniens* motion to dismiss; and (iii) failing to act appropriately and timely to finalize settlement with Defendant.

Ms. Soegiyono and her counsel of record have repeatedly proposed to Plaintiff Nurdin and Herrmann that they allow Ms. Soegiyono to globally settle with Boeing all claims related to Decedents Soegiyono and Wiranofa's death and ***sequester all settlement proceeds*** in a trust account, while Ms. Soegiyono and Plaintiff Nurdin resolve later any dispute regarding the allocation of those proceeds. Any issue concerning said allocations and Ms. Soegiyono, and Plaintiff Nurdin's respective counsels' claims for fees and costs, could then be resolved at a later date without hindering or harming the children's claims. Rather than agree to these terms in order to ensure F.F.N.W. and F.S.N.W. obtain full settlement value, as opposed to a markedly discounted value or nothing in the event of a dismissal, Plaintiff Nurdin and Herrmann have refused them and failed to present any reasonable alternative. Indeed, Nurdin and Herrmann have engaged in unethical gamesmanship, ensnaring Ms. Soegiyono in a classic ***bait and switch*** scam. They initially authorized Ms. Soegiyono to globally settle, which she did, but then turned around and asserted to Boeing that she lacks standing to do so and used the negotiated settlement amount as a floor for their own future negotiations with Defendant.

Accordingly, F.F.N.W. and F.S.N.W. desperately need a third-party, professional guardian *ad litem* appointed to protect their interests from the adverse interests of their grandfather, Plaintiff Nurdin, and his counsel at Herrmann, who have consistently demonstrated that their own financial interests appear to be paramount to the interests of the girls.[1]

This motion is based on this notice and the concurrently filed and/or attached memorandum of points and authorities, declarations (filed in camera under seal), and exhibits;

---

[1] Indeed, Plaintiff Nurdin and Herrmann's conduct may justify an order disqualifying Herrmann as counsel for F.F.N.W. and F.S.N.W. Plaintiff Nurdin's interests are now irreconcilably adverse to the children's interests, and Herrmann cannot represent both Nurdin and the girls. Ms. Soegiyono accordingly reserves her rights to bring such a motion or the court may exercise its right to disqualify Herrmann *sua sponte*.

any further briefing or evidence that may be filed in support of this motion; and any further arguments or evidence that may be submitted at any hearing of this matter.

Dated: April 30, 2020

/s/ Brian S. Kabateck, Esq.

Attorney for Plaintiff RINI SOEGIYONO,
Administrator of the Estate of NIAR RURI
SUNARNIATI SOEGIYONO

**KABATECK LLP**
Brian S. Kabateck, Cal. State Bar No. 152054
(*admitted pro hac vice*)
bsk@kbklawyers.com
Christopher B. Noyes, Cal. State Bar No. 270094
(*admitted pro hac vice*)
cn@kbklawyeers.com
633 West Fifth Street, Suite 3200
Los Angeles, CA 90071
Tel: 213-217-5000
Fax: 213-217-5010

/s/ Sanjiv N. Singh, Esq.

Attorney for Plaintiff RINI SOEGIYONO,
Administrator of the Estate of NIAR RURI
SUNARNIATI SOEGIYONO

**SANJIV N. SINGH, APLC**
Sanjiv N. Singh, Cal. State Bar No. 193525
admin@sanjivnsingh.com
1650 South Amphlett Blvd. Suite 220
San Mateo CA 94402
Tel: 650-389-2255
Fax: 415-358-4006

**Table of Contents**

Table of Contents.............................................................................1

Table of Authorities.................................................................. 3

NOTICE OF MOTION............................................................ ii

I.  INTRODUCTION ...........................................................4

II.  FACTS ...........................................................................6

    A.  Decedents Andri Wiranofa & Niar Soegivono..........................6

    B.  Complaints Filed For Estates Of Decedents Wiranofa &
       Soegiyono...............................................................6

    C.  History of Wiranofa Family Emotional And Physical Abuse......7

    D.  Ms. Soegiyono's Immediate Care & Custody Of The
       Children..................................................................8

    E.  Nurdin's Theft Of Decedents Soegiyono & Wiranofa's Official
       Documents During Funeral...........................................8

    F.  Nurdin's Fraud To Obtain Governmental Insurance Benefit
       For The Death of Niar Soegiyono....................................9

    G.  Nurdin's Fraud To Obtain An Invalid Guardianship Order....10

    H.  Nurdin's Isolation Of The Children, Harming Their
       Well-Being, And Wrongful Seizure Of Family Assets.............11

    I.  Nurdin's History Of Greed In This Action, Including The
       Fraudulent Release & Discharge Of Decedent Wiranofa's
       Heirs' Claims..........................................................12

    J.  Nurdin and Herrmann Decline All Constructive Action.........12

III.  THIS COURT SHOULD APPOINT A PROFESSIONAL GUARDIAN
*AD LITEM* TO PLAINTIFFS MINORS F.F.N.W. and F.S.N.W TO

PROTECT THEIR INTERESTS IN THIS LITIGATION........................ 14

IV. MS. SOEGIYONO ATTEMPTS TO RESOLVE THE INSTANT

MOTION, IN GOOD FAITH, PRIOR TO ITS FILING ........................16

**V. CONSLUSION**...…….….…….….…….….…….….…….….…….….…….…....18

## Table of Authorities

### CASES

*T.W. by Enk v. Brophy,*

    *124 F.3d 893, 895 (7th Cir. 1997)* ................................................................ 14

*In re Chicago, Rock Island & Pacific R.R.,*

    *788 F.2d 1280, 1282 (7th Cir. 1986)* ......................................................... 14

*Noe v. True,*

    *507 F.2d 9, 11 (6th Cir. 1974)* .................................................................... 14

*1 Ad Hoc Comm. of Concerned Teachers on Behalf of Minor & Under-Age*

    *Students v. Greenburgh No. 1Union Free Sch. Dist.,*

    *873 F.2d 25, 29 (2d Cir. 1989)* ................................................................... 15

*Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare,*

    *883 F.2d 25, 27 (5th Cir. 1989)* ................................................................. 15

*Adelman ex rel. Adelman v. Graves,*

    *747 F.2d 986, 1988 (5th Cir.1984)* ........................................................... 15

*Hoffert v. General Motors Corp.,*

    *656 F.2d 161, 164 (5th Cir.1981) cert. denied, 456 U.S. 961, 102 (1982)* .. 15

*Roberts v. Ohio Cas. Ins. Co.,*

    *256 F.2d 35, 39 (5th Cir. 1958)* ................................................................. 00

### STATUTES

*Federal Rules of Civil Procedure, Rule 17(c)*……………………………………ii,14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

An order appointing a professional guardian *ad litem*[2] in this matter is urgent and necessary because this case should, first and foremost, be about the best interests of the two minor daughters, Plaintiff F.F.N.W. (DOB 10/3/2007, age 12) and Plaintiff F.S.N.W. (DOB 9/12/2011, age 8), left tragically orphaned by the crash of Lion Air Flight JT610.  Moving Plaintiff RINI SOEGIYONO ("Ms. Soegiyono"), the maternal aunt of the two girls and sister of their deceased mother, Decedent NIAR RURI SURNARIATI SOEGIYONO ("Decedent Niar Soegiyono" or "Decedent Soegiyono"), did not sign any agreement to release or discharge Defendant THE BOEING COMPANY ("Defendant" and/or "Boeing"). Instead, Ms. Soegiyono hired moving counsel to bring this action to represent the interests of the orphans F.F.N.W. and F.S.N.W.  While Ms. Soegiyono has consistently acted in the interests of the girls, Plaintiff NURDIN RAKHMAN SEMENDAWAI ("Nurdin"), the girls' paternal grandfather and father to Decedent ANDRI WIRANOFA ("Decedent Wiranofa"), within days of the crash, falsified documents to secure payment of a small governmental travel insurance death benefit and, subsequently, fraudulently signed an agreement releasing and discharging claims against Defendant for the death of Decedent Wiranofa. As discussed in detail below, Plaintiff Nurdin has consistently falsified documents to fraudulently usurp assets and claims belonging to the children

---

[2] As set forth in greater detail under Section III, Ms. Soegiyono recommends two qualified and experienced professional guardians *ad litem* in the Illinois area:

    (i)      Paul S. Franciszkowic of FMS Law Group LLC (*see* https://www.fmslawgroup.com/our-professionals/paul-s-franciszkowicz/);  or

    (ii)    Leynee A. Cruz of Chuhak & Tecson (*see* https://www.chuhak.com/?t=3&A=15368&format=xml&p=5027).

Ms. Soegiyono, however, is receptive to any professional guardians *ad litem* approved or previously used by this Court.

and Decedent Soegiyono's heirs. He placed the girls' claims and well-being in danger. Almost one year after the crash, he hired the HERRMANN LAW GROUP ("Herrmann") to, subsequently and belatedly, file an action approximately one month ago asserting claims regarding the death of Decedent Wiranofa. Although Herrmann and Nurdin initially authorized Ms. Soegiyono to reach a global settlement of all claims arising from the deaths of Decedents Soegiyono and Wiranofa, they then pulled a "bait and switch" scam when Ms. Soegiyono reached a fair and reasonable settlement in principal. Herrmann and Nurdin then asserted to Boeing that Ms. Soegiyono lacks standing to represent the heirs' claims and used the negotiated amount achieved by Ms. Soegiyono's counsel as the "floor" for its own future negotiations with Defendant. Ms. Soegiyono, her counsel, and the mediator handling all Lion Air Flight JT610 claims have repeatedly proposed to Herrmann and Nurdin that they put aside their dispute without waiving any rights, work with Ms. Soegiyono to globally settle all claims, including the minor plaintiffs' claims, and appoint a third-party professional trustee to maintain all settlement proceeds in a trust account. This proposal would have avoided any risk of dismissal of the minor plaintiffs' claims on *forum non conveniens* grounds. Nurdin and Herrmann have steadfastly and cavalierly refused to accept this proposal without any logical or reasonable justification or proposed alternative. A professional guardian *ad litem* is therefore necessary now to protect the girls' interests. (***It is not requested, necessary, or appropriate for this court to address custody issues—those issues shall be resolved in Indonesia after this matter***.) In addition, said guardian *ad litem* can retain counsel of their choosing for the girls in this case so that settlement can be finalized. Whether that counsel is Soegiyono's counsel, who are not conflicted and may effectively represent the girls interests as they have been doing, or any other attorney does not matter provided said counsel can put the interests of the girls first. All counsel, in discharge of

5

their ethical and moral responsibilities, should join in this request to do the right thing by these girls.

## II.     FACTS

### A.     Decedents Andri Wiranofa & Niar Soegiyono

Husband and wife, Decedent Wiranofa and Decedent Soegiyono, tragically died during Lion Air Flight JT610 when Defendant's Boeing 737-MAX 8 Aircraft crashed on October 29, 2018, in Indonesia, leaving their two minor daughters, F.F.N.W. and F.S.N.W., orphaned, alone, in pain, and grieving the sudden and incomprehensible death of their parents. (Declaration of Sanjiv N. Singh ("Singh Decl.") at Ex. 14 [Complaint].) At the time of Decedent Soegiyono's death, her own parents were deceased, and, in addition to her two minor daughters, she was survived by two adult siblings, her sister and brother: Ms. Soegiyono and Non-Party Triwidya A. Soegiyono. (*Id.* at Ex. 1 [Declaration of Heirs].) At the time of Decedent Wiranofa's death, he was survived by his parents: his father Plaintiff Nurdin and mother Dewi Afriza ("Afriza"). (*Id.* at ¶ 3.)

### B.     Complaints Filed For Estates Of Decedents Wiranofa & Soegiyono

On May 21, 2019, Ms. Soegiyono filed this wrongful death and survival action in the United States District Court, Northern District of Illinois, entitled *Rini Eka A. Soegiyono, Administrator of the Estate of Niar Ruri Sunarniati Soegiyono, vs. The Boeing Company*, Case No. 1:19-cv-03415, on behalf of Decedent Soegiyono's estate to represent the interests of the estate, its heirs, and, most importantly, the orphaned nieces F.F.N.W. and F.S.N.W. (Singh Decl. at Ex. 14 [Niar Soegiyono Complaint] and at ¶ 6.) On August 6, 2019, seeing that no one was taking action for the girls interests in the Wiranofa claims, Ms. Soegiyono also filed a wrongful death and survival action in the same Court, entitled *Rini Eka A. Soegiyono, Administrator of the*

*Estate of Andri Wiranofa*, Case No. 1:19-cv-05311, on behalf of Decedent Wiranofa's estate to represent and protect the interests of her orphaned nieces F.F.N.W. and F.S.N.W.. (*Id.* at Ex. 15 [Andri Wiranofa Complaint] and at ¶ 7.) On March 17, 2019, Plaintiff Nurdin belatedly filed a wrongful death and survival action in the same Court, Case No. 1:18-cv-07686 purportedly on behalf of Decedent Wiranofa's estate and the girls. (Ex. 16 [Nurdin Complaint].)

### C.   History of Wiranofa Family Emotional And Physical Abuse

Prior to Decedent Soegiyono's untimely passing, she clearly expressed to her children's nanny, Hartini, and sister, Ms. Soegiyono, that, in the event of her death, Ms. Soegiyono, should care for, and take custody of, her daughters. (Singh Decl. at Ex. 2 [Declaration of Hartini, dated 1/30/2020 ("Hartini Decl.")], at ¶ 4.) Decedent Soegiyono's wishes were rooted in the emotional and physical abuse she both observed and personally experienced with Decedent Wiranofa due to his father Plaintiff Nurdin. (Ex. 7 [Supplemental Declaration of Hartini, dated 2/13/2020 ("Hartini Supp. Decl.")], at ¶¶ 3-6.) In the time leading up to Decedent Soegiyono's death, Decedent Wiranofa became visibly agitated after visits from his father Nurdin, where Nurdin would demand money from the family and then criticize and belittle his own son. (*Id.*) Decedent Wiranofa, in turn, released his fury and temper on Decedent Soegiyono, emotionally and physically tormenting her on repeated occasions by pointing a pistol at her head, throwing objects at her, and breaking household items, like a mug or portrait, without any regard for the children who ran and hid in the bedroom or bathroom with their nanny. (*Id.*; Ex. 6 [Lunar Soegiyono Decl.], at ¶¶ 9-12, 14.) Decedent Soegiyono believed that her husband's abuse and violence stemmed from his father, Nurdin's, abuse; she thus wanted her sister, Ms. Soegiyono, to care for her children in the event of her death. (*Id.* at Ex. 7 [Hartini Supp. Decl.], at ¶ 6; Ex. 6 [Lunar Soegiyono Decl.], at ¶ 12.) This was particularly true where Nurdin and his wife Afriza

had no meaningful relationship with the children, and had never made any effort to show affection towards them while Decedents Soegiyono and Wiranofa were still living. (*Id*. at Ex. 7 [Hartini Supp. Decl.], at ¶¶ 4-10; Ex. 6 [Lunar Soegiyono Decl.], at ¶¶ 5-8, 13, 15.)

**D.** **Ms. Soegiyono's Immediate Care & Custody Of The Children**

Consistent with her sister's wishes, Ms. Soegiyono immediately took custody of F.F.N.W. and F.S.N.W., moving into their family home on or about October 29, 2018, so that the children were not completely displaced from everything they have known. (*See generally*, Singh Decl. at Ex. 2 [Hartini Decl.]; Ex. 4 [Rini Soegiyono Decl.]; Ex. 5 [Satria Decl.]; Ex. 6 [Lunar Soegiyono Decl.].) Ms. Soegiyono immediately began caring for them, feeding them, comforting them, watching over them, keeping them in school, and providing for their financial needs. (*See generally*, Singh Decl. at Ex. 2 [Hartini Decl.]; Ex. 4 [Rini Soegiyono Decl.]; Ex. 5 [Satria Decl.]; Ex. 6 [Lunar Soegiyono Decl.].)

**E.** **Nurdin's Theft Of Decedents Soegiyono & Wiranofa's Official Documents During Funeral**

Ms. Soegiyono took the children to their mother, Decedent Soegiyono's funeral, on or about November 6, 2018. (Singh Decl. at Ex. 4 [Rini Soegiyono Decl.], at ¶ 9; Ex.5 [Satria Decl.], at ¶ 6; Ex. 6 [Lunar Soegiyono Decl.], at ¶ 6.) To their horror, not a single member of Decedent Wiranofa's immediate family, in particular Nurdin and Afriza, attended the funeral to comfort the girls as they mourned the loss of their beloved mother. (Singh Decl. at ¶¶ 12-13; Ex. 4 [Rini Soegiyono Decl.], at ¶ 9-10; Ex.5 [Satria Decl.], at ¶ 6; Ex. 6 [Lunar Soegiyono Decl.], at ¶ 6-7.) Nurdin showed a complete lack of respect and support for their mother Decedent Soegiyono. (Singh Decl. at ¶¶ 12-13; Ex. 4 [Rini Soegiyono Decl.], at ¶ 9-10; Ex.5 [Satria Decl.], at ¶ 6; Ex. 6 [Lunar Soegiyono Decl.], at ¶ 6-7.) Nurdin also used the time to ransack the

family home for official government papers belonging to Decedents Soegiyono and Wiranofa that he needed and immediately used to fraudulently cash in on their deaths. (Singh Decl. at ¶¶ 12-13; Ex. 4 [Rini Soegiyono Decl.], at ¶ 9-10; Ex.5 [Satria Decl.], at ¶ 6; Ex. 6 [Lunar Soegiyono Decl.], at ¶ 6-7.)

     F.     **Nurdin's Fraud To Obtain Governmental Insurance Benefit For The Death of Niar Soegiyono**

Indonesia provided the direct heirs of victims who died in the Lion Air flight JT610, such as F.F.N.W. and F.S.N.W., with a governmental travel accident insurance death benefit. (Singh Decl. at ¶ 13.) To obtain the benefit, heirs needed to only submit a declaration and official documentation, such as identification cards, registered family cards, death certificates, or similar official documents. (*Id*.) Nurdin, having stolen Decedent Soegiyono's government papers from their family home, signed a declaration, on or about November 8, 2018, fraudulently declaring himself as guardians of the minors F.F.N.W. and F.S.N.W. to collect the children's promised proceeds for the death of their mother and use for his own purposes. (Singh Decl., at ¶ 12-13; see also Ex. 4 [Rini Soegiyono Declaration] at ¶ 9.) Nurdin appears nowhere on the Declaration of Heirs for Decedent Soegiyono and, on November 8, 2018, had absolutely no basis whatsoever to claim that he was a guardian for the girls. (*Cf.* Singh Decl. at Ex. 1 and at ¶¶ 12-13.)

To make matters worse, Nurdin posed smiling for a photo with a government official handing him the check for the children's travel accident death benefit, and he posed at the home of the Decedents right underneath the main family portrait in the home's main living room. (Singh Decl. at ¶ 13; Ex. 9 [Photo of Nurdin & Check].)

### G.    Nurdin's Fraud To Obtain An Invalid Guardianship Order

On November 19, 2018, a meeting was held at the Decedents' home in Jakarta with the Indonesian State Prosecutor's Office to determine the appropriate guardian for the children and coordinate a psychological evaluation of the girls necessary to determine custody issues. (Singh Decl. at Ex. 4 [Rini Soegiyono Declaration] at ¶ 11.) At that meeting, it was plainly stated by one of the children and Ms. Soegiyono that Decedent Soegiyono wanted Ms. Soegiyono to take custody of her children in the event of her death. (*Id*.)

Nurdin must have recognized for some time that Ms. Soegiyono would likely be appointed as the children's guardian. As such, prior to the meeting, he had secretly and fraudulently filed a petition, that very same month of November 2018, in a religious tribunal in Bogor, far outside the jurisdiction of Jakarta where the children and Ms. Soegiyono lived, to obtain an invalid order awarding him custody of the children, without anyone else knowing. (Singh Decl. at ¶ 15.) The Bogor religious tribunal was not made aware of the existence of family in Jakarta or the proceedings occurring in Jakarta, and, instead, was falsely led to believe that Nurdin was actively caring for the children unopposed. (*Id*. at ¶ 15, Ex. 10.) Under these false pretenses, the Bogor religious tribunal, lacking jurisdiction over family matters in Jakarta, issued an invalid order by December of that year purporting to grant Nurdin custody of the children, as the only purported available family member to take custody of the children—without notice to Ms. Soegiyono, or an opportunity to be heard, and without having any psychological evaluation completed in accord with the Jakarta State Prosecutor's Office's direction. (Singh Decl. at Ex. 10, Ex. 3.) This order is believed to be void, and its validity will be litigated in Indonesia. (*Id*. at Ex. 3)

**H.**     <u>Nurdin's Isolation Of The Children, Harming Their Well-Being, And</u>
<u>Wrongful Seizure Of Family Assets</u>

Nurdin's emotional abuse did not merely include his refusal to participate in the children's mother's funeral. He proactively isolated the children, dismissing their nanny Hartini in or around November and December 2018, forcing their beloved aunt Ms. Soegiyono out of their home in approximately March 2020, threatening the girls with Rini Soegiyono's arrest if they contact her, locking the children out of their parents' bedrooms, forbidding the children from speaking about their parents, and generally exuding a cold and uncaring disregard for them similar to that caught in the photo he took receiving benefit money. (See generally Singh Decl. at Ex. 7 [Hartini Supp. Decl.]; Ex. 2 [Hartini Decl.]; Ex. 4 [Rini Soegiyono Decl.]; Ex. 5 [Satria Decl.]; Ex. 6 [Lunar Soegiyono Decl.].) The children are terrified of Nurdin. (Ex. 7 [Hartini Supp. Decl.], at ¶¶ 8-10; Ex. 4 [Rini Soegiyono Decl.], at ¶¶ 14-18; Ex. 5 [Satria Decl.], at ¶ 6; Ex. 6 [Lunar Soegiyono Decl.], at ¶¶ 7-8, 13, 15.) Several individuals, having no financial interest in the children, including the children's former nanny, Hartini, and cousins Lunar Soegiyono and Hibar Satria, have all attested to the emotional abuse and detriment to the children's well-being. (*Id*.) During the COVID-19 pandemic, the girls have been isolated and alone under Nurdin video surveillance with servants with the home, while the Nurdin clan remains isolated 1 hour away in Bogor which is a COVID-19 hotspot. Nurdin did not provide them care other than servants before the pandemic, and now is further prevented from doing so due to his age and physical location. (Singh Decl. at ¶ 30.) Moreover, Nurdin's attempt to isolate the children can only be derived from his own-self-interest. While isolating the children, he and his agents have coordinated the seizure of the Decedents' assets (cars, house deeds, cash) without

any consultation with Decedent Soegiyono's family members and heirs. (Singh Decl. at Ex. 2, 3, 4, 5, 6, 7, 8, 9 and 10; see also Singh Decl. at ¶¶ 11-17.)

**I.**     **Nurdin's History Of Greed In This Action, Including The Fraudulent Release & Discharge Of Decedent Wiranofa's Heirs' Claims.**

Nurdin's financial motives are *not* solely revealed by his fraud to usurp the children's governmental travel death benefit in or around November 2018, his fraudulent misleading of the Bogor religious tribunal, or his theft of family assets. His greed and the lengths to which he will go are revealed in the fraudulent release and discharge of the children's claims against Defendant. (Singh Decl. at Ex. 5 [Satria Decl.], at ¶¶5-7; Ex. 6 [Lunar Soegiyono Decl.], at ¶ 7; Ex. 4 [Rini Soegiyono Decl.], at ¶ 7.)

In the initial months after the crash, Nurdin had absolutely no valid authority to act on behalf of F.F.N.W. and F.S.N.W. Yet he signed an agreement to discharge and release Decedent Wiranofa's heirs claims against Lion Air, Boeing, and other component manufacturers. (Singh Decl. at ¶ 15.) In so doing, he fraudulently attempted to appropriate the children's claims for a small sum of quick cash far below the claims' value. (Singh Decl. at ¶ 15.)

It appears that Nurdin also attempted to intimidate government officials to release the death certificate of Decedent Soegiyono for no conceivable purpose other than to obtain additional monies through either a release and discharge of the children's claims arising from the death of Decedent Soegiyono or to obtain the Boeing non-litigation claim fund proceeds administered through the Feinberg Law Offices. (Singh Decl. at ¶ 17.)

**J.**     **Nurdin and Herrmann Decline All Constructive Action**

Beginning in and around November 2019, Ms. Soegiyono's counsel informed Herrmann of their concerns regarding Nurdin's interference with Ms. Soegiyono's attempts to settle the

children's claims with Defendant. They also informed them of Nurdin's ongoing pattern of abuse and fraudulent conduct designed and carried out to advance Nurdin's interests to the detriment of the children's interests. (Singh Decl. at ¶ 18.) Herrmann did nothing meaningful to address these disclosures.

In January 2020, Ms. Soegiyono's counsel met with Herrmann to walk Nurdin's counsel through a power point presentation summarizing the evidence counsel gathered regarding Nurdin's misconduct and to emphasize the importance of setting aside any dispute that would undermine the settlement of the children's claims. At this meeting, Herrmann contradicted itself, responded disinterestedly, ignored repeated attempts to come to an agreement that would protect the children, and, to date, utterly failed to meaningfully refute or rebut any of the facts outlined above or present any evidence to the contrary. (Singh Decl. at ¶¶ 18-26.)

Shortly thereafter, Herrmann and Nurdin initially authorized Ms. Soegiyono to reach a global settlement of all claims arising from the deaths of Decedents Soegiyono and Wiranofa. (Singh Decl. at ¶18(d).) When Ms. Soegiyono reached a fair and reasonable settlement in principal for a global amount, Nurdin and Herrmann then pulled a "***bait and switch***". (*Id*. at ¶¶ 19-20.) They asserted that Ms. Soegiyono lacks standing to represent the heirs' claims and used the negotiated amount as the "floor" for their own future negotiations with Defendant. Defendant has refused to participate in further settlement until the issues are resolved.

Repeatedly, Plaintiff Soegiyono, her counsel, and the meditator handling all Lion Air Flight JT610 claims have proposed reasonable and just solutions to ensure the swift and fair resolution of the orphans' claims, without waiver of Nurdin and Ms. Soegiyono's dispute regarding the appropriate representative or guardian for the children. (Singh Decl. at ¶ 31.) Ms. Soegiyono has proposed that she globally settle with Defendant all claims for Decedents

Soegiyono and Wiranofa's heirs and estates for an amount that would be, in its entirety, placed in a trust account administered by a third-party professional trustee. (*Id*.) Additionally, the dispute regarding the appropriate guardian or representative, standing, and Nurdin's release and discharge would not provide Defendant reason to seek dismissal of the children's claims on grounds of *forum non conveniens*. (*Id*.) Once a global settlement is reached and all related funds sequestered, Nurdin, Ms. Soegiyono, and their respective counsel can agree upon an allocation and, if necessary, seek Court action to resolve any remaining dispute between them. (*Id*.) There is absolutely no legitimate conceivable reason to refuse this proposal. (*Id*. ) The only logical conclusion that can be reached for rejecting the current proposal would be to control the settlement funds, including any attorneys' fees. (*Id*.)

III.     **THIS COURT SHOULD APPOINT A PROFESSIONAL GUARDIAN *AD LITEM* TO MINOR PLAINTIFFS F.F.N.W. and F.S.N.W TO PROTECT THEIR INTERESTS IN THIS LITIGATION.**

     In view of the facts set forth above and the Singh Declaration in camera, this Court should appoint a professional guardian *ad litem* for the minors to protect their interests in this litigation.  The facts set forth above demand that the Court quickly intervene on their behalf.

     It is well-established that "[i]f the general representative has a conflict of interest, or fails without reason to sue or defend, the child may with the court's permission sue by another next friend, or the court may appoint a guardian ad litem for the child." *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997) (internal quotations omitted); *In re Chicago, Rock Island & Pacific R.R.*, 788 F.2d 1280, 1282 (7th Cir. 1986).  A federal court may appoint such guardians as necessary for the protection of the child's interests.  *See* Fed. R. Civ. P., Rule 17(c); *Noe v. True*

, 507 F.2d 9, 11 (6th Cir. 1974); *1 Ad Hoc Comm. of Concerned Teachers on Behalf of Minor & Under-Age Students v. Greenburgh No. 1 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989). Thus, federal courts have the express authority "to appoint a guardian *ad litem* to the situation where the general representative's interests conflict with those of the person she is supposed to represent." *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 883 F.2d 25, 27 (5th Cir. 1989); *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 1988 (5th Cir.1984); *Hoffert v. General Motors Corp.*, 656 F.2d 161, 164 (5th Cir.1981) *cert. denied,* 456 U.S. 961, 102 (1982); *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958).

A professional guardian *ad litem* should be appointed to represent the interests of the minors to protect them from Nurdin and its counsel Herrmann in this litigation. As set forth more fully above, Nurdin has not only endangered the children's well-being by isolating them, stifling their sorrow, prohibiting them from entering their parents' bedroom or speaking of their parents, and threatening them with Ms. Soegiyono's arrest if they contact her, but he has also taken calculated steps to undermine the children's ability to recover full and fair compensation for the death of their parents in this US litigation. Nurdin and Herrmann have refused all just and reasonable means to resolve any dispute regarding standing and allocation of settlement proceeds in order to maximize the children's recovery and prevent any harm to their claims.

Ms. Soegiyono recommends appointing one of the following two qualified professional guardians *ad litem* in the Illinois area: Paul S. Franciszkowic of FMS Law Group LLC (*see* https://www.fmslawgroup.com/our-professionals/paul-s-franciszkowicz/) or Leynee A. Cruz of Chuhak & Tecson (*see* https://www.chuhak.com/?t=3&A=15368&format=xml&p=5027). Both attorneys have considerable experience in dealing with minor-litigants and other dependents who require professional representation. Courts have previously appointed both attorneys as

professional guardians *ad litem*. Of note, Mr. Franciszkowic has also been a licensed attorney for nearly three decades, lectured extensively on guardianship and related issues at local law schools, and published numerous articles. Aside from Mr. Franciszkowic and Ms. Cruz, Ms. Soegiyono is receptive to any professional guardian *ad litem* approved or trusted by this Court.

This case should never be about attorneys' fees or Nurdin's greed or the greed of counsel. It should only be about providing some justice and financial support to F.F.N.W. and F.S.N.W., two orphaned daughters who suddenly and tragically lost both of their parents in the Lion Air Flight JT610 crash. While this Court may not be able to award custody of the children to someone who makes the children's interests paramount to their own, this Court can appoint a professional guardian *ad litem* to protect their interests in this litigation. The guardian *ad litem* would select counsel of their choosing, be it Ms. Soegiyono's counsel or other attorney, and protect the viability and value of the children's claim from Nurdin and Herrmann's adverse and self-serving interests.

## IV. MS. SOEGIYONO ATTEMPTS TO RESOLVE THE INSTANT MOTION, IN GOOD FAITH, PRIOR TO ITS FILING.

Pursuant to Judge Thomas M. Durkin's general order applying Local Rule 37, Ms. Soegiyono, by and through her counsel of record, telephonically conferred, in good faith, on or before today with all parties interested in the instant motion to resolve the issues presented, including: Nurdin, by and through its counsel Herrmann; Herrmann; and Defendant by and through its counsel. Defendant has not asserted an objection or stated whether it would join in the instant motion or oppose it; they have asked moving counsel to inform the Court that if they have issues, they will file a response in writing. (Singh Decl. at ¶ 32.) Defendant was made aware that there will be an in camera filing that contains sensitive jointly privileged information

or attorney work product and that Plaintiff Soegiyono believes Defendant should not be permitted access to that information. (*Id*.)

Nurdin and Herrmann have asserted an objection, and indeed during the process of meeting and conferring, engaged in more erratic behavior. (Singh Decl. at ¶ 31.) Indeed, Herrmann and his own co-counsel Mark Lindquist seemed to have different information on different days, and seemed to not be in touch with each other given inconsistencies of their statements. (*Id*.) More concerningly, at one point, they purported to have "Indonesian counsel" advising them but the individuals whom they put up as their Indonesian counsel appear to be Herrmann's former client from a U.S. mass tort in the State of Washington and his former client's wife and the former client's friend, none of whom are believed to be qualified counsel in Indonesia based on the investigations of Plaintiff Soegiyono's well respected and recognized counsel. (*Id*.) During email communication with Herrmann's group, his so called Indonesian counsel's email address appeared defunct and nonexistent. (*Id*.) This is extremely concerning as it strongly suggests that Herrmann and Nurdin are not taking proper steps to protect the girls' interests; in stark contrast, Plaintiff Soegiyono's counsel, at their own expense, hired respected and well known firms in Indonesia, including the law firms of Kailimang Ponto and Adams Co, both firms having highly respected leading Indonesian attorneys on their roster and actively involved in advising on the welfare of the girls. (*Id*; see also Ex. 3.)

The meet and confer process regarding the general issues presented in this motion has been lengthy and involved multiple discussions between the interested parties and mediator over several months. (Singh Decl. at ¶ 31.) Unfortunately, the parties have no successfully resolved these issues, nor agreed upon a professional guardian *ad litem*. (*Id*.) In fact, the meet and confer process and attempts to settle and resolve the matters revealed instead that Herrmann remains very focused on his own fees. (*Id*.) Indeed, when Plaintiff Soegiyono's counsel attempted to reach an understanding that would allow the girls loving aunt to see them and have some basic visitation rights, Herrmann and/or his colleagues reacted repeatedly by saying that his focus was the Boeing money and resolving fee issues. (*Id*.) Mr. Kabateck and Mr. Singh have been morally

17

horrified by this conduct, and repeatedly urged Herrmann and his colleagues to change their position on this, but they would not. (*Id.*) Once again, it appears that Herrmann and his client were not in fact meeting and conferring in good faith, but were instead buying time because they knew that Plaintiff Soegiyono had this motion prepared to file and were planning on filing it.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff Rini Soegiyono respectfully and urgently requests the Court issue an order appointing a professional guardian *ad litem* for F.F.N.W. and F.S.N.W. for the In Re: Lion Air Flight JT610 Crash matter so that the girls claims can be resolved and not endangered by the interests of Nurdin and his counsel.

Dated: April 30, 2020

*/s/ Brian S. Kabateck, Esq.*
Attorney for Plaintiff RINI EKA A. SOEGIYONO, Administrator of the Estate of NIAR RURI SUNARNIATI SOEGIYONO

**KABATECK LLP**
Brian S. Kabateck, Cal. State Bar No. 152054
(*admitted pro hac vice*)
bsk@kbklawyers.com
Christopher B. Noyes, Cal. State Bar No. 270094
(*admitted pro hac vice*)
cn@kbklawyeers.com
633 West Fifth Street, Suite 3200
Los Angeles, CA 90071
Tel: 213-217-5000
Fax: 213-217-5010


*/s/ Sanjiv N. Singh, Esq.*
Attorney for Plaintiff RINI EKA A. SOEGIYONO, Administrator of the Estate of NIAR RURI SUNARNIATI SOEGIYONO

**SANJIV N. SINGH, APLC**
Sanjiv N. Singh, Cal. State Bar No. 193525
admin@sanjivnsingh.com
1650 South Amphlett Blvd. Suite 220
San Mateo CA 94402
Tel: 650-389-2255 / Fax: 415-358-4006

## **CERTIFICATE OF SERVICE**

Brian S. Kabateck, an attorney, certifies that, on April 30, 2020, counsel filed the foregoing document via CM/ECF which thereby electronically served all interested parties to the instant motion.

Dated: April 30, 2020

*/s/ Brian S. Kabateck, Esq.*
Brian S. Kabateck, Cal. State Bar
No. 152054 (*admitted pro hac vice*)

19